**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000670
03-OCT-2017
01:42 PM**

NO. CAAP-15-0000670

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ALLEN M. OZAKI, Plaintiff-Appellee, v.
DENISE N. SAUNDERS and WINDWARD WHEELS, LLC,
Defendants-Appellants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 14-1-2349-11 KTN)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendants-Appellants Denise Saunders (**Saunders**) and Windward Wheels, LLC (**Wheels**) (collectively, **Appellants**) appeal from the November 5, 2015 Final Judgment (**Judgment**) filed in the Circuit Court of the First Circuit (**Circuit Court**).[1]

At the conclusion of a bench trial, the Circuit Court found Saunders and Wheels jointly and severally liable to Plaintiff-Appellee Allen M. Ozaki (**Ozaki**) for Unfair or Deceptive Acts or Practices (**UDAP**) pursuant to Hawaii Revised Statutes

---

[1] The Honorable Karen T. Nakasone presided.

(HRS) §§ 437-12 (Supp. 2013),[2] 286-52 (2007),[3] 480-2 (2008),[4] 480-13(b) (2008),[5] and 480-13.5 (2008).[6]

---

[2]    HRS § 437-12 provides:

        **§ 437-12 Legal ownership certificates.** (a) Possession of or right to possess legal ownership certificate. No dealer shall sell or advertise for sale a new motor vehicle unless the dealer has in the dealer's possession the actual legal ownership certificate or a certificate of origin or its equivalent issued to the dealer by the manufacturer or distributor for the subject motor vehicle. No dealer shall sell or advertise for sale a used motor vehicle unless the dealer has in the dealer's possession evidence that all liens on the subject motor vehicle have been satisfied and the actual legal ownership certificate or proof of the right to possess the legal ownership certificate for the subject motor vehicle.

        (b) Delivery of legal ownership certificate. The legal ownership certificate shall be delivered within the time period specified in section 286-52(b).

[3]    HRS § 286-52 provides in relevant part:

        **§ 286-52 Procedure when title of vehicle transferred; delivery of certificate mandatory.** (a) Upon a transfer of the title or interest of a legal owner in or to a vehicle registered under this part, the person whose title or interest is to be transferred and the transferee shall write their signatures with pen and ink upon the certificate of ownership issued for the vehicle, together with the address of the transferee in the appropriate space provided upon the certificate.
        (b) Within thirty calendar days thereafter, the transferee shall forward the certificate of ownership so endorsed to the director of finance who shall file the same; provided that if the recorded lien holder does not have an office in the State, the applicable period shall be sixty days.

[4]    HRS § 480-2 provides in relevant part:

        **§ 480-2 Unfair competition, practices, declared unlawful.** (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.
        . . . .
        (d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.

[5]    HRS § 480-13(b) provides in relevant part:

        **§ 480-13 Suits by persons injured; amount of recovery, injunctions....** (b) Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:

(continued...)

On appeal, Saunders and Wheels contend that the Circuit Court erred when it found: (1) that John Siracusa (**Siracusa**) acted as an agent of Appellants; (2) that Ozaki was a "consumer" as defined in HRS § 480-1 (2008); and (3) that Ozaki was entitled to relief as an "elder" under HRS § 480-13.5. Saunders and Wheels also argue that the Circuit Court erred when it awarded attorneys' fees to Ozaki.[7] Notably, Saunders and Wheels do not challenge on appeal the finding that Saunders received cash payment in full for the subject Volkswagen GTI from Ozaki's son, Chad Y. Ozaki (**Chad**).

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Appellants' contentions as follows:

---

[5] (...continued)
(1)    May sue for damages sustained by the consumer, and, . . . where the plaintiff is an elder, the plaintiff, in the alternative, may be awarded a sum not less than $5,000 or threefold any damages sustained by the plaintiff, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit. In determining whether to adopt the $5,000 alternative amount in an award to an elder, the court shall consider the factors set forth in section 480-13.5[.]

[6]    HRS § 480-13.5 provides, in part:

**§ 480-13.5 Additional civil penalties for consumer frauds committed against elders.** (a) If a person commits a violation under section 480-2 which is directed toward, targets, or injures an elder, a court, in addition to any other civil penalty, may impose a civil penalty not to exceed $10,000 for each violation.
. . . .
(c)    As used in this chapter, "elder" means a consumer who is sixty-two years of age or older.

[7]    The issue of attorneys' fees was not identified as a point of error, but was part of Appellants' request for relief.

(1)  Saunders and Wheels contend that Siracusa was not their agent when he solicited Ozaki and Chad for the purchase of the Volkswagen.

> An agency relationship may be created through actual or apparent authority. Actual authority exists only if there has been a manifestation by the principal to the agent that the agent may act on his account and consent by the agent so to act[,] and may be created by express agreement or implied from the conduct of the parties or surrounding circumstances.

Cho Mark Oriental Food, Ltd. v. K & K Int'l, 73 Haw. 509, 515, 836 P.2d 1057, 1061-62 (1992) (citations and internal quotation marks omitted).

> Where implied actual authority is asserted, the focus is on the agent's understanding of his authority inasmuch as the relevant inquiry is whether the agent reasonably believes, because of the conduct of the principal (including acquiescence) communicated directly or indirectly to him, that the principal desired him so to act.

State v. Hoshijo ex rel. White, 102 Hawai'i 307, 322, 76 P.3d 550, 565 (2003) (quoting Cho, 73 Haw. at 515-16, 836 P.2d at 1061-62) (internal quotation marks omitted).

> Apparent authority arises when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he was purported to have.  The critical focus is not on the principal and agent's intention to enter into an agency relationship, but on whether a third party relies on the principal's conduct based on a reasonable belief in the existence of such a relationship.

Cho, 73 Haw. at 516-17, 836 P.2d at 1062 (internal quotation marks, emphasis, and citations omitted).

Here, Saunders testified that she and Siracusa maintained a business relationship in which their mutual understanding was that Siracusa was to refer business to Saunders.  Siracusa apparently had access to the keys to the vehicles at the Wheels dealership, as he took Ozaki for a test drive of the subject vehicle off the Wheels lot.  Siracusa

testified that Saunders paid Siracusa $600 for "bringing [Ozaki] down." Further, Saunders testified that when trying to collect payment, she contacted Siracusa, not Ozaki or Chad because "he always wanted to be respected, to keep it separate, like as far as like if he refers a customer, he didn't really want me to talk to them." When the form Retail Purchase Agreement for the Volkswagen was completed (in part), Siracusa testified that he filled in part of the top section of the form. Saunders then asked Ozaki if the information was correct, and the form was signed by Ozaki and Saunders. According to Siracusa, he then informed Ozaki, with Saunders present in the Wheels office, that they did not have the title, but they would deliver it to him in a couple of weeks. We conclude that, based on all of the evidence in the record, including the foregoing, substantial evidence supports the Circuit Court's finding that Siracusa acted as the Appellants' agent in connection with this transaction.

(2) Appellants argue that Ozaki was not a "consumer," as defined in HRS § 480-1, because the car was not purchased with his money and because Chad was the primary driver of the car. This argument is without merit.

A UDAP claim may be brought only by "a consumer, the attorney general or the director of the office of consumer protection." HRS § 480-2(d). "Consumer" means

> a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment.

5

HRS § 480-1. The definition of "Purchase" under chapter 480 includes "contract to buy." HRS § 480-1 (internal quotation marks omitted).

Ozaki was solicited to purchase goods for personal, family or household purposes when he was solicited to buy the Volkswagen. Indeed, he purchased (or at least attempted to purchase) the Volkswagen, within the plain meaning of HRS § 480-1, when he and Saunders entered into the agreement for him to buy the car. Appellants cite no authority for the proposition that the purchase had to be with Ozaki's money or that it had to be intended for his own personal use, and we find none. On the contrary, HRS § 480-1 specifically references goods intended for family or household uses. Accordingly, the Circuit Court did not clearly err when it found that Ozaki qualified as a "consumer," as that term is defined in HRS § 480-1.

(3) Saunders and Wheels admit that Ozaki is an elder, within the meaning of HRS § 480-13.5(c), but argue that they should not be subject to additional civil penalties under HRS § 480-13.5 because Chad was the "actual consumer/purchaser," not Ozaki. There is substantial evidence in the record to support the Circuit Court's findings and conclusions that Defendants "commit[ted] a violation under section 480-2 which is directed toward, targets, or injures an elder," potentially implicating an additional civil penalty not to exceed $10,000, pursuant to HRS § 480-13.5(a).

However, HRS § 480-13.5(b) provides:

> (b)    In determining the amount, if any, of civil penalty under subsection (a), **the court shall consider** the following:
> (1)    Whether the person's conduct was in wilful disregard of the rights of the elder;
> (2)    Whether the person knew or should have known that the person's conduct was directed toward or targeted an elder;
> (3)    Whether the elder was more vulnerable to the person's conduct than other consumers because of age, poor health, infirmity, impaired understanding, restricted mobility, or disability;
> (4)    The extent of injury, loss, or damages suffered by the elder; **and**
> (5)    Any other factors the court deems appropriate.

(Emphasis added.)

Here, the Circuit Court addressed only the first two factors, in Findings of Fact 30 and 31.  Ozaki's arguments pertain to the third, fourth, and possibly the fifth part of the section (b) requirements.  Concerning HRS § 480-13.5(b)(3), there is no finding for example, that Ozaki was "more vulnerable" than other consumers, or that the wrongful post-transaction repossession that constituted the fraudulent conduct was related to Ozaki's status as an elder.  With regard to the HRS § 480-13.5(b)(4) factor of extent of "injury, loss, or damages," there is no finding as to the injury, loss, or damages suffered by Ozaki.  Ozaki was awarded "treble damages" in the amount of $17,100 for theft (i.e. the repossession) of the vehicle,[8] as well as an additional $5,000 for an "additional" HRS § 480-2 violation of "selling the subject vehicle to [Ozaki] in violation of HRS § 437-12(a) "by operation of HRS §§ 480-13(b)(1) and -(d)," as well as the maximum "elder consumer" penalty of $10,000 pursuant to HRS § 480-13.5.  As to HRS § 480-13.5(b)(5), there

---

[8]    On appeal, Appellants do not challenge the treble damages.

are no findings concerning whether there were "other factors" supporting the penalty. Upon review of the record, there is no readily discernible rationale for the imposition of the maximum civil penalty of $10,000 under HRS § 480-13.5 and the $5,000 awarded under HRS § 480-13(b)(1) due to Ozaki being an elder, and no explanation is provided by the Circuit Court regarding the last three factors under HRS § 480-13.5(b).[9] Thus, we conclude that we must vacate this portion of the damages award and remand for further consideration by the Circuit Court.

Finally, although Saunders and Wheels seek relief from the Circuit Court's allowance of attorney's fees, they provided no grounds for that request, other than to contend that the recovery of fees flows from Ozaki's elder status. This argument is without merit.

For these reasons, the Circuit Court's November 5, 2015 Judgment is affirmed in part and vacated in part. This case is remanded to the Circuit Court for further proceedings consistent with this Summary Disposition Order.

DATED: Honolulu, Hawai'i, October 3, 2017.

On the briefs:

Anthony T. Fujii,
for Defendants-Appellants.

Charles S. Lotsof,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

---

[9]  HRS § 480-13(b)(1) also provides that "[i]n determining whether to adopt the $5,000 alternative amount in an award to an elder, the court shall consider the factors set forth in section 480-13.5[.]"

8